The final case of this calendar is number 23-13249. Olivia Coley-Pearson v. Emily Martin et al. Zach Greenemeier and the Southern Center for Human Rights for Olivia Coley-Pearson who is here. It appears that defendants now agree with these principles. They do not defend the ban as issued. Instead, what remains is a jury question about proximate cause. Did defendants cause the ban that issued to be issued? A reasonable jury could readily find that these defendants got what they asked for. Or at the very least, they got a foreseeable result from the words they used. I'd like to speak briefly to walk through the record evidence on this point. There are three buckets of facts on plaintiff's side and then there's one on defendant's side that I'd like to look at. First, Martin says this should apply to any election. During any election is her words. That happens immediately after a question about the geographic scope where she asks, will this work on the Douglas precinct on election day? The officer then says it could apply to any election facility. She says, there you go. That's how I would like it read. And then shortly thereafter, she says, I would like it to apply, quote, during any election. Second, her words are emphatic and without limitation. At 9.52 in the first video, quote, I don't care what I've got to do, what I've got to, I don't care what I've got to file, what I've got to do. She is not to come back to my office. Later, at 28.45, she says, quote, do whatever I've got to do to get rid of her. Three, her words are repeated right before Coley Pearson is arrested. In the second video, at 1.37 in the run time, she says, Miss Olivia, you are banned from this parking lot. When Coley Pearson comes, she doesn't even get out of her car to deliver someone to get an ID at the same government building. Your challenge relates to the criminal trespass warrant. You have not challenged Martin's demand for your client to leave or the statement that led to your client being charged, correct? I think, to some extent, that is all bound up, but if the- Complained very specifically, and each count says criminal trespass warrant. Right, and I think that's where it gets to a problem of a significant constitutional dimension because this ban applies to any election, and certainly we had to file a lawsuit so that she could vote in the 2020 runoff that happened, right? As you aptly noted, we have to work through a causation issue. How do you distinguish this case from Brown v. City of Huntsville, where we know that merely telling a police officer to arrest someone is not enough to become the cause of the arrest? Right. So here, the question- This goes to the statutory authority of a property owner to get somebody off of their land, right? So under Georgia Code 16721, the offense is a person commits the offense of criminal trespass when they remain upon the land after being asked to leave, right? So there's no dispute, obviously. Martin asked for our client to leave, and then once that happened, and she did not- You know, she came back, or she didn't leave when given the trespass ban. That was the reason that she was arrested. There's no allegation that she committed any criminal offense other than she was present, right? So because of how the Georgia statute works, where you have to have someone with authority ban the person from the property, could law enforcement ever be an intervening cause in that situation? I don't know that they could. Because the statute requires the participation of the owner of the property. Right. And even if in some situations they might be an intervening cause, here it's certainly like they're not an intervening cause that breaks the chain of causation because it's plenty foreseeable, right? Like, you know, the next thing in that sequence is Martin says, yes, if she doesn't leave, please arrest her. You need to leave or you're going to be arrested, right? And that's immediately after the law enforcement officer asks, you're the property owner, do you want her to leave? She says yes, and then she's arrested, right? So I don't think there's any unforeseeable intervening cause that that, you know, presented here. So the officer comes to the scene, performs an investigation by asking what happened, right? And then issues and writes himself the criminal trespass warrant, then comes back to arrest her when she violates it. So how is that not an intervening cause? So the officer comes and the investigation is really designed to determine what is the property owner's intent, right? It's not just Martin's intent, it's the whole county's intent, right? So when you watch the video, you'll see the police officials say, like, all right, let's call the county attorney, let's call the, let's get a poll of the Board of Elections to see whether this is the county's intent. So that's like the thrust of the quote-unquote investigation, and that's the only relevant investigation that doesn't go to the viewpoint discrimination issue that we may get to, right? The question is, what is the property owner's intent? They understood that after their investigation. The only evidence that defendant points to on the other side of this, saying that they wanted some shorter ban, is a post hoc memo, which is found at document 69-15, which says that she was only banned for 2020, which, you know, applies to, you know, up through the time where we had to file suits so that she could vote in person. And this is, you know, you can tell from the face of this document that it was written after Ms. Coley-Pierceman had been arrested. I don't know there's any evidence that law enforcement saw this, you know, until well after Coley-Pierceman was arrested. And to the extent there's any difference between the post hoc memo and the words that you can see in here in the video, two points. One, this is Scott v. Harris territory. The video is what controls. And two, those differences to the extent they're material could show or could give rise to a jury thinking that Martin is not credible, right? So I want to turn to reasonableness and focus the court on its recent decision in Moms for Liberty, which really, you know, synthesizes a lot of strains of reasonableness, whether it's a limited public forum or a non-public forum here for the most part. It says reasonableness is not consistent with an indeterminate prohibition, with open-ended interpretation, with undefined key terms, with the absence of official guidance, with the vestiture of too much discretion, with haphazard and arbitrary application. That's what we have here. And turning to the issue of unbridled discretion, we have two layers at least of unbridled discretion, right? What is disruptive in the first instance? There's no rule. There's no guidance. There's no definition. There are a lot of election rules. There's nothing there. But then— Do you concede that the polling place is a non-public forum? The polling place itself, I think, is. It's not a parking lot. I think parts of the parking lot are. You know, so there may be parts of the parking lot that are not. But, you know, I think under— Under McDonough. Under McDonough, regardless— This is a non-public forum. Right. And it passes with its viewpoint neutral and reasonable. And reasonable under—but the reasonableness—and that's the same standard, I think, whether it's a limited public forum or a non-public forum. And as Moms for Liberty says, quoting Mansky, which is an elections case, the reasonableness test is, you know, somewhat permissive, but it's not toothless, right? And so the second layer of unbridled discretion is what do we ban for? We can ban you if you're disruptive here, but what else can we ban you for, right? There's no guidance whatsoever. Certainly not guidance as to what the duration of the ban is, what the geographic scope is, and what do you do to lift it, right? Like in McDonough, there was a big problem because the person asked, how do I undo this? And they said write a letter. Here, there's no—there's not even any direction to write a letter. There's no, like, criminal case that she can do anything in. The only remedy she has to undo this ban is to do what she did, which is to file a lawsuit. Let me ask you about viewpoint discrimination for a minute. So I think it's undisputed that a disruption was caused between Ms. Coley-Pearson and Ms. Martin. Does that undercut your argument that the trespass warning was viewpoint discrimination? No, on these particular facts, right? So, you know, on Coley-Pearson's facts taken in her light, you know, Martin hears that she's helping voters, and she's angry. She comes up at her. She starts yelling at her. You know, for a second, Coley-Pearson stands her ground. She raises her voice, but not as loud as Martin, and then she leaves, right? But that is, you know, part and parcel with this history where, you know, you have the prior failed prosecutions. You have evidence in the record of Martin texting the DA, you know, repeatedly about, like, innocuous conduct that Coley-Pearson is engaged in. You have Nesmith's testimony about, you know, her getting angry when she heard she was helping voters. And, you know, really importantly, the police understand that Martin's purpose in doing this ban is, quote, she doesn't want her assisting anyone else, right? But you wouldn't dispute that your client participated in the disruption? I think we would dispute that it wasn't disruptive, but— You would dispute that your client got in Martin's face? Yes. Yes. Martin came to her. She was where she was, and then she left, right? So, yes, we do dispute that. But I think, you know, the more important thing is that this is not a reasonable ban. Even if there was a brief moment of disruption, it doesn't lead to a perpetual, unreviewable ban. Thank you. May it please the Court, I'm Emily Hancock, and I represent the Appalese, Emily Martin in Coffey County. We ask today that you affirm the trial court's ruling, and that can be done on the causation grounds that the trial court relied on. It can be done on the many other grounds that the trial court also evaluated and found warranted summary judgment. And in the case of Appalese Martin, it can also be done on qualified immunity grounds that the district court did not reach, but which also warrant summary judgment in favor of Martin. We all agree now that the main issue before the Court today is causation. This is not because, as the appellants say, we've conceded all the other issues. We absolutely have not and certainly have not conceded, in particular, that the trespass warning was unlawful. The reason that the causation issue is what needs to be examined here is because we don't need to put the cart before the horse. If we can't draw a link from the Appalese conduct to the harm alleged by the appellant, there's no need to get into anything else. There's a lot of everything else in this case, but the district court decided this on causation. And on appeal, the plaintiff has not put forth any kind of case law, any kind of argument saying, here is a case where you show how to draw a link in a situation like this, and here is the evidence in this case that meets that requirement. We've seen some... Let me ask you this question. Would the trespass warning have been written and issued but for Ms. Martin's actions? So, obviously, Ms. Martin called the police to come out there. We don't know because I don't think it was asked whether one of the other poll watchers who had gone and gotten Martin to say there's a disruption out here, someone else could have called the police, too. That's entirely possible because there was... There's no evidence in this record that that happened. No, there's not, and so... As I see it, the warning would not have happened without Ms. Martin's actions. She's the one who called the police. She's the one who asked for Ms. Coley-Pearson to be trespassed. Certainly, the police came... Ms. Martin was required to issue the trespass warning? Yes, and the trespass warning was issued because Martin called the police and asked them to come out and look into the situation. Right, so how is it not foreseeable to her that the trespass warrant would be issued? So, I think that's two different issues, and that gets to the fact that the appellants keep saying this unreviewable ban. The ban is one thing. Martin's saying, I don't want her here at the building. Yes, I'd like to seek a criminal trespass warrant. That's the conduct Martin actually engaged in. Now, the trespass warrant itself is something different. But is there evidence in the record from which a reasonable jury could conclude that she intended an indefinite term for the warrant? I don't believe so, Your Honor, no. And I think it's remarkable, in the appellant's opening brief, they said there's no daylight between what Martin requested and what the officer put. And we went back and looked at every single piece of the factual record that's being used to back this up, and what you see is there's a back and forth between Martin and the officer questioning, well, am I able to do this? Am I able to do that? It's actually the officer who suggests that a trespass warning could potentially be appropriate. That wasn't even something Martin requested to begin with. And as for the duration, as the district court noted, yes, the word, I think, any election came out of her mouth. It was in extreme of consciousness. If you look at the transcript, there's a bunch of ellipses in this part. She did not say, as the appellant's counsel said, quote, I want it to be for any election or anything similar. It was the phrase, any election floating by, untethered to anything else. So certainly there's nothing that says she said, I want her out of here permanently, forever. She can never come back. There's nothing that says, I want her out of here for every election in perpetuity. And by the reply brief, the appellants have backed off of that argument some. And now the argument is, well, she didn't tell the officer not to do that. And that becomes a foreseeability issue. And the other part of this foreseeability inquiry, the Dixon case that's discussed in our brief, which is not an anomaly. It's cited frequently by this court for the rule that when you have a deliberative and autonomous decision-maker come into the middle of this process, causation is cut off. And Dixon doesn't talk about foreseeability. Dixon has its own set of factors that are to be looked at. And we went through those, and we showed, you know, were the actions of the decision-maker free, independent, and volitional? Did the decision-maker understood that he didn't have to accept the direction he was being given? And so on. It's hard to think of a decision-maker who's much more deliberative and independent than a police officer from an unaffiliated jurisdiction who comes in and hears this information and then by himself in his vehicle drafts up this trespass warrant and does not show it to anyone affiliated with the appellees. What do we do with Ms. Martin's statement to the officer? I don't care what I've got to file and what I've got to do. She is not to come back in my office. So two things on that particular statement. Her office is where she's sitting while this conversation is going on. Obviously, there's just been a heated encounter. And she doesn't say, I don't— Ms. Coley Pearson never came in her office. No, I don't believe so. And then would not if she was— No, there's no claim that Ms. Coley Pearson was trying to come in the office. Frankly, I don't know what the comment about in my office meant in that context. She's not saying she's not ever to come in this polling precinct again. She's not ever to get near any of these buildings again. To the extent that that's the strongest language she has indicating, I don't want her anywhere near me ever, it applies only to her office, which is not anywhere that Coley Pearson ever was at any point during this case. And I think even if Ms. Martin had requested largely the terms that ended up in the bin, the fact that a police officer drafted it independently under Dixon is still going to cut off causation because, again, there is no foreseeability analysis under Dixon. Is this person acting without any undue influence from Ms. Martin? And there has been no allegation that she— In your view of the law, could there ever be a situation in which a law enforcement officer was not an intervening cause if the law enforcement officer came out, talked to somebody, and then wrote up a warrant? Yes. I think, actually, in this Court's opinion in Carruth v. Bentley in 2019, there was some discussion, I think, in dicta about potentially a cat's paw theory that if an officer comes out and gets this information and does nothing to follow up on it and has, in fact, been given untruthful information, unreliable information, and just acts on that— You don't hear of cases where people lie to get the officer to do the warrant or whatever. They do fraud and lie. Something like that's happened. Yes. You can still sue, perhaps. Right. I have this question, and maybe it's not appropriate, but it seems to be important. Can she go there now, or is she under a ban? Or in the next election, can she go there? Is this ban ongoing, or was it that day, that arrest, that time? The ban was lifted, I believe, shortly after the suit was filed because the runoff election was occurring. So the ban is temporary. Correct. It ended up being in place. So she's not under a ban today to go to this polling place. She is not. And this wasn't her polling place. She was trying to help somebody vote because they were infirmed. Correct. I'm not sure whether it's her polling place. We know she had already voted in that election.  It's a matter of trying to assist, which is helpful. Yes. Somebody to vote at that polling place. And it is undisputed in the record. She's not on a ban today. Thank you very much. She is not on a ban today, and she was not banned from voting ever, even under the—  Okay. There was a ban about going there to help people that day. Okay. Yes. And so the ban is completely gone at this point. It was in place for a very short amount of time, and it was put into place by a deliberative and autonomous decision-maker, and I think it's important that the appellant has not responded at all to that deliberate and autonomous framework that was advanced in our brief. It is clearly relevant in a situation where you're trying to evaluate causation when you have someone making a recommendation and another decision-maker potentially acting on it. This Court has supplied a framework to look at there, and so we don't need to just pull cases for general statements of proximate causation law when there's a much more specific sort of framework that can be applied here. The Fourth Amendment claim suffers from all of the same causation problems as the First Amendment claim, and then from the additional issue of probable cause, which, again, the appellant has not responded to our discussion of the fact that this arrest was supported by probable cause, and an arrest supported by probable cause does not give rise to a Fourth Amendment claim. This kind of highlights the tenuousness of the connection here between the appellees and the arrest in particular because there's no claim against an arresting officer if there's probable cause. It's undisputed that Ms. Coley-Pearson did not leave when she was told to. That's obstruction under Georgia law. We said as much in our brief and have not heard anything to the contrary from appellants. And so with probable cause for the arrest out there, obviously the officer who actually arrested her cannot be held accountable. How are we going to hold people who spoke to the officer several hours prior and said, I'd like her off the property? How could they be accountable for that arrest? There's certainly no chain of causation that can go through an officer when he's not going to be liable under the Fourth Amendment. I want to touch on qualified immunity as well for Defendant Martin, and this is not one of the bases for the district court's ruling because the district court found no constitutional violation and then explicitly said we need not reach qualified immunity for that reason. And I think this court in Gates v. Kochar said, you know, that judges disagree about a constitutional issue is itself evidence that a right is insufficiently clearly established. The federal judge, with the benefit of time, written record, legal research, looked at all this universe of information and said there's no constitutional violation here. And so any finding that Martin is not entitled to qualified immunity would essentially be saying that Martin needed to know more than the federal judge said. As she stood there on the spot that day, she should have figured this out, even though the federal judge, with the benefit of time and research, came to a different conclusion about the legality of this conduct. I don't want to belabor the remaining defenses because there are a lot of them. And by touching on them, I don't want to make it seem like we need to go beyond causation because I don't think we do in this case. But I do want to talk about the letter brief that was filed, the supplemental authority that appellants filed. The Moms for Liberty case was dealing with a set of policies, actually, that they said had undefined key terms and haphazard application. And these were written policies being applied at a board meeting. And this is an issue that comes up with the unbridled discretion discussion. And then the district court noted this is not a written policy. This is not something that we can take text of it and pick it apart and challenge it. This is a trespass warning issued to one person. The Gerard case that the appellants cite in that supplemental authority notice says, under the First Amendment, a party can challenge a licensing rule on its face on the ground that it vests unbridled discretion. That's not what we have here. A lot of the cases cited in the appellants brief are dealing with licensing rules, the prior restraint cases. There is no case that has been cited by appellants where these rules are being applied in a context of a trespass warning. This would be the first because all of the cases in the brief on those issues are talking about written rules that are being applied more widely. You can see that Mara was acting as a final policymaker for the county. She was acting as a final policymaker for the county in requesting the ban but not in obtaining the trespass warrant because a line cannot be drawn from her to the trespass warrant. But, yes, by speaking with the county attorney and getting the quorum of the Board of Elections to weigh in on whether it was appropriate to ban Ms. Coley-Pearson, she was acting for the county at that point. If you had to disagree with the argument on the intervening cause, you would concede that she would be acting for the county? She was acting for the county in going so far as calling the officer because, again, the officer suggested the ban. The decision was made, you know, let's get the officer here, and then they conferred about it and said, yes, let's ask to have her off the property. The county did not make the decision to put what was in that specific trespass warning. She did not act for the county to the extent that the terms in the ban vary from what she was discussing with the members of the board that she spoke with. Luckily, we have the benefit of it all being on video, so we have the whole universe of conversation between her and the board members. We see exactly what they approved. So are you saying that the officer was not the intervening cause? Are you conceding Manel liability for the county? No, we do not concede Manel liability. She was able to act on behalf of the county to request that a ban be issued, but not the specific ban that was issued. The district court also said in our case law that says the single incident is not so pervasive as to be a customer practice. Absolutely. There's no allegation that this has ever happened before, and certainly not multiple substantiated instances of similar problems happening in the past. I see that I am out of time. Thank you. Thank you, Your Honor. A few seriatim points. First, on the question of the words that were used to determine the temporal scope of the ban, 2945 to 31 in the first video. This is where we have a discussion of should it apply to any polling place, and then should it apply during any election. Quote during any election comes from Martin's mouth, and it is the most specific words that are used to determine scope of time. Two, on Dixon, there's nothing to deliberate. This isn't like an instance where they're trying to determine whether there was a violation of a penal statute. There's no allegation that that happened. The only thing that is being investigated is the county's intent and whether Martin's intent works with the county. That's what they did, right? To Judge Hull's point or question about can Ms. Coley-Pierson vote today? Yes. The ban was lifted to a motion for preliminary injunctive relief, but regardless of whether she could vote or not vote, she was an elected official doing constituent services, taking people to a variety of different places, including not just voting activity, but to get this woman an ID when she was arrested. So she's not under a ban now? Correct, yes. How can people vote? Correct. Okay. To the question about unbridled discretion and the permitting issue, this Court's precedent, including in Girard, shows that that applies in a wide range of circumstances. So in Bourgeois, which we cited, that applies to whether or not to use a magnetometer at a given protest. In Burke, it applies to whether an indemnification agreement can be required or what the terms of those are. And in this Court's decision in Barrett, it says that it can apply to, as we have here, ad hoc decisions of government. Briefly on the question of qualified immunity, under Tolon v. Cotton, the question is, you know, if the facts are properly construed in plaintiff appellant's favor, is there qualified immunity? If there's viewpoint discrimination, for example, or if there's a question of fact about viewpoint discrimination, obviously there's no qualified immunity. And Girard, for example, applied the unbridled discretion framework to a brand-new setting, a jail, the most non-public of forums, and denied qualified immunity. And this Court's decision in Holloman v. Harland in addressing viewpoint discrimination, unbridled discretion, prior restraint, forum analysis generally, said, quote, we need no longer focus on whether the facts of a case are materially similar to prior precedent in those contexts. So the order granting summary judgment should be reversed because jury questions remain about proximate cause. That precludes judicial resolution at this time. A reasonable jury could find facts that would support Coley-Pearson's entitlement to relief for an unreasonable ban for viewpoint discrimination for multilayered unbridled discretion and prior restraint. For that reason, we would ask that this Court reverse and remand. Thank you. Thank you. Court is adjourned. All rise.